7   679
44   397

## THE STATE OF LOUISIANA *v.* THE ORLEANS NAVIGATION COMPANY.

It was decided in this case, that the Orleans Navigation Company had forfeited its charter, by violating the conditions of the act of incorporation ; but held, " The charter requires the company to keep, ordinarily, three feet of water [in the canal] at low tides; yet the fact of less water being found occasionally, in consequence of extreme low stages of the lake, should not be attended with a forfeiture of the charter."

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Isaac Johnson*, Attorney General, and *Roselius* and *Burthe*, for the State. *A. Hennen*, and *Benjamin* and *Micou*, for the defendant. By the court :

PRESTON, J.   The Bayou St. John was a navigable stream previous to the cession of Louisiana to the United States. The Spanish Governor, the Baron Carondelet, excavated the basin and canal to connect the navigation of the bayou with the rear of the city. Both were of smaller dimensions than at present, yet they were used by the small schooners on the lakes.

On the 3d of July, 1805, the Governor and Legislative Council of the Territory of Orleans, incorporated " The Orleans Navigation Company." By the 9th section of the charter it was provided, that, " As soon as the company shall have improved the navigation of the Bayou St. John, so as to admit, at low tides, vessels drawing three feet water, from Lake Ponchartrain to the bridge at the settlement of the bayou, then the president and directors shall be entitled to ask, have, and receive, from every vessel passing in or out of the bayou, a sum not exceeding one dollar for every ton of the admeasured burden of the vessel, and so in proportion for every vessel of a burden less than one ton. And when further improvements shall permit vessels drawing three feet water to pass from the bayou by the Canal Carondelet to the basin, terminating the same at the city ditch, the president and directors shall be entitled to receive an additional toll, not exceeding a dollar per ton."

As early as 1820, great complaints were made by citizens of this State and others, interested in the navigation of Lake Ponchartrain, against the company,

STATE
*v.*
THE ORLEANS
NAVIGATION
COMPANY.

of a violation of their charter, and of their failure to keep the Bayou St. John and Canal Carondelet in navigable order.    And the Legislature, by a resolution of the 16th of February, 1821, directed a suit to be instituted by the attorney general against the company, for the forfeiture of its charter, for malfeasance and nonfeasance.    The case was decided against the State.    11 M. R. 309.

In 1832, the complaints having been renewed, the State incorporated the New Orleans Canal and Banking Company; and, as bonus, exacted the construction of a basin, and a canal from the city to the lake, capable of admitting vessels drawing six feet of water, and at a reduced rate of toll of 37½ cents a ton.    This canal has long since been completed, and compelled the defendants to reduce their tolls to a still lower rate.    They then borrowed a large amount of money but do not appear to have expended it with success, as their affairs have declined constantly since ; and the district court came to the conclusion, on the evidence, that they were totally insolvent.

Again, in 1835, the Legislature directed proceedings to be taken against the company, for failing to keep the navigation in the situation required by the charter ; but, for some reason, no effectual proceedings were taken.

The evidence, in this case, fully supports the conclusion of the court, that the defendants are insolvent.    Their own witness believes that, without aid from other sources than the stockholders, the company will never be able to pay its debts.    All its property, except its rights upon the basin, canal, and Bayou St. John, has been sold.    The revenues from them have been under seizure by the sheriff for —— years, and do not pay the interest on their debts.    Those revenues are daily diminishing, while their debts are increasing, and their stock of one hundred dollars a share has been sold for fifty cents.

If the navigation is not in the situation required by the charter, the company have no resources to improve it ; indeed, none to keep the works from constant dilapidation, and the basin, canal, and bayou, from depreciation in value.

A single witness represents, that he is authorized by a party, whom he refuses to disclose, to take a lease of the property of the company for twenty years, and put the navigation into a situation which will respond to the provisions of the charter.    As he is not authorized to disclose the party for whom he acts, he afforded the district court no means of judging of the ability of the party to accomplish the objects of the charter.    The same objects being those of the State, this court has delayed its decision some time, the Legislature being in session, to see if the party would openly disclose his means, and make some arrangement satisfactory to the State.    It has not been done.

For the same reason that the evidence produced no impression on the district court, it has afforded no satisfaction to this court.    There is not that openness and publicity on the part of the secret party and his proposals, which properly belong to all matters of public concern, and without which, confidence cannot be inspired.

The evidence in this case satisfies us, that the company have not kept the navigation of the canal and bayou in the situation required by the charter ; but, on the contrary, have, for a length of time, violated their charter, by not keeping the depth of water required, either in the bayou or canal, and, indeed, almost abandoning both.

It is contended, that the charter requires the company to keep, ordinarily, three feet of water at low tides, but that the fact of less water being found occasionally, in consequence of extreme low stages of the lake, should not be attended

with a forfeiture of the charter. We concur in that opinion, but are satisfied by the evidence, that there is not ordinarily, at low tides, three feet of water throughout the extent of the navigation.

*Captain Vidal* says, that in the winter time, at low tides, there is only two and a half feet water on the bar.

*Captain Sarazin* has found the water several times but two and a half feet deep on the bar.

*Mr. Blanc* testifies, that there is not more than two and a half feet water at the mouth of the canal. We understand this to be the ordinary state of the low water stage, because, he says that, in low water, the bayou, at its junction with the Canal Carondelet, has not more than two feet four or five inches in depth. He further proves, that the average depth of water at the bar, during the last ten years, at low tide, has not been more than two feet, four, five or six inches, and this, with a width or channel hardly sufficient for a small vessel to pass.

*Captain Dumas* sounded the bar at the mouth of the bayou, at low tide, and found but two and a half feet water, and could not get out with his schooner, light, having only that draft.

*Captain Palpa* sounded the bar at the mouth of the bayou, and found but the same depth of water, at low tide ; and, shortly before the trial, had to pay five dollars for lightening his vessel, drawing but three feet water.

*Mr. Clark*, proves the same thing. And *Mr. Buisson*, who probably sounded the bayou for the purpose of giving the court exact information as to its depth at low tide, gives a still more unfavorable account of the want of the depth of water required by the charter.

Other witnesses prove, and the books of the company show, that vessels drawing four or five feet of water, have entered and gone out. The prevalence of southern and easterly winds fills the lake from the sea, and produces, generally, sufficient water for the navigation. But the evidence preponderates in showing, that the ordinary stage of low water, both at the mouth of the canal and mouth of the bayou, and, perhaps, at intermediate stages, opposite the draining machines, is less than the three feet required by the charter of the company.

In fact, *Mr. Fagan*, who has been superintendent of the works of the company for near twenty years, says, "he believes it to be his duty to keep a record of the depth of the water on the bar, and did so for several years, until of late years the water got so very bad, and the trade also, that he did not think it necessary to keep a record."

A dredging machine, which the company had for the purpose of deeping the bayou, was sunk two or three years ago, and they have not replaced it, nor even raised it ; so that it has become, itself, a dangerous obstruction to the navigation. To use the expression of one witness, the navigation has become most horrible ; and, of another, detestable. The canal and bayou are filling up every year. The harbor is dangerous, and the works of the company, generally, are rotting down, dilapidating, and seem to be abandoned.

The navigation, which, by the improvements of near half a century, should have attained all the perfection of which it is susceptible, is obstructed so as to cause great expense and delay to navigators, by lightening; is dangerous, so as often to subject the vessels and commerce to much loss, for which there is no recourse, except against an insolvent corporation. In fact, we doubt if the bar, at least, which affects the whole navigation, is in a better situation, than in the time of the Baron Carondelet. So that the whole object of the act of incorporation has failed.

STATE
v.
THE ORLEANS
NAVIGATION
COMPANY.

Proceeding, therefore, to render such judgment as it appears to us should have been rendered in the district court,

It is ordered, adjudged, and decreed, that the corporation of the Orleans Navigation Company has forfeited its charter; that it be dissolved, and henceforth extinct, for the violation of the conditions of the act of incorporation.